CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
1/13/2026
LAURA A. AUSTIN, CLERK
BY: s/ J. LOPEZ
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| PATRICK JOSEPH MCNAMARA, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.: __3:26cv2__<br>) JURY TRIAL DEMANDED |
| CHIEF MICHAEL KOCHIS, | )<br>) |
| DETECTIVE CHRISTOPHER RAINES, | )<br>)<br>) |
| OFFICER IAN HAUG, | )<br>) |
| DETECTIVE JUSTIN BOWERS, | )<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Patrick Joseph McNamara ("Plaintiff"), by counsel, brings this civil action for damages and other relief against Defendants Chief Michael Kochis, Detective Christopher Raines, Officer Ian Haug, and Detective Justin Bowers (collectively, "Defendants"), and respectfully alleges as follows.

## PARTIES

1. Plaintiff Patrick Joseph McNamara is an adult resident of Charlottesville, Virginia.

2. Defendant Michael P. Kochis at all relevant times served as Chief of Police of the Charlottesville Police Department ("CPD") and acted under color of state law. He is sued in his individual capacity.

3. Defendant Detective Raines at all relevant times was a law-enforcement officer employed by CPD and acted under color of state law. He is sued in his individual capacity.

4. Defendant Officer Ian Haug at all relevant times was a law-enforcement officer employed by CPD and acted under color of state law. He is sued in his individual capacity.

5. Defendant Detective Justin Bowers was a law-enforcement officer employed by CPD and acted under color of state law. He is sued in his individual capacity.

6. At all relevant times, each Defendant acted individually and in concert with others, within the course and scope of authority claimed by virtue of employment as a law-enforcement officer, and under color of state law.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under 42 U.S.C. § 1983 and the Constitution of the United States.

8. This Court has supplemental jurisdiction over Plaintiff's Virginia common-law malicious prosecution claim pursuant to 28 U.S.C. § 1367 because that claim forms part of the same case or controversy as Plaintiff's federal claim.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

10. The acts and omissions giving rise to Plaintiff's claims occurred in the City of Charlottesville, Virginia, within the Charlottesville Division of the Western District of Virginia.

11. This Court has personal jurisdiction over each Defendant because each Defendant resides in Virginia and committed the acts and omissions alleged herein in Charlottesville, Virginia.

12. Plaintiff demands trial by jury on all issues so triable.

## FACTUAL ALLEGATIONS

13. Plaintiff is a law-abiding citizen who, before the events described herein, had no criminal record and enjoyed a strong reputation in his workplace and community.

14. On January 12, 2024, CPD received a report from a complainant identified as J.L. alleging that she was assaulted while running on the Rivanna Trail in Charlottesville, Virginia.

15. J.L. reported that the assailant wore a distinctive item of clothing that she described as a "white puffy jacket."

16. J.L. further reported that she believed she recognized the assailant as someone she had previously seen on or near the trail.

17. Later on January 12, 2024, CPD received a second report of an assault in the Rivanna Trail and Riverview Park area.

18. CPD canvassed the area and received the name of a possible suspect lead unrelated to Plaintiff, but CPD failed to meaningfully follow up on that lead.

19. The area along the Rivanna Trail corridor is lined by multiple businesses and locations with surveillance coverage, and surveillance evidence was readily available to assist law enforcement in identifying the assailant.

20. Despite the availability of surveillance evidence, Defendants and other CPD personnel failed to promptly obtain and review surveillance evidence before seeking a warrant for Plaintiff's arrest.

21. On or about January 16, 2024, CPD received a photograph of Plaintiff from a local running group J.L. was associated with.

22. Members of the running group exchanged Plaintiff's photograph and discussed Plaintiff as a suspect among themselves, and J.L. identified Plaintiff only after being exposed to those suggestions and social reinforcement.

23. Rather than employing accepted identification procedures designed to protect against misidentification, Defendants relied on informal and unduly suggestive identification methods.

24. Defendants failed to conduct a properly administered lineup or photo identification procedure, failed to document an identification procedure consistent with best practices, and failed to disclose material facts bearing on the unreliability of the identification they relied upon.

25. Instead, based on an unreliable and untested identification and without conducting an objectively reasonable investigation, Defendants and other CPD personnel sought and obtained an arrest warrant for Plaintiff for assault and battery.

26. On January 18, 2024, CPD officers arrested Plaintiff at his residence at 905 River Road, Apt. 305, Charlottesville, Virginia 22901, using an unmarked vehicle and taking Plaintiff into custody in handcuffs.

27. CPD officers seized Plaintiff's phone and headphones and transported Plaintiff to downtown Charlottesville for questioning.

28. CPD then transported Plaintiff to the Albemarle-Charlottesville Regional Jail, where Plaintiff was processed, fingerprinted, photographed, and incarcerated.

29. Plaintiff was detained for several hours in connection with the charge before being released.

30. Plaintiff was released on a recognizance bond subject to conditions that materially restricted his liberty, including restrictions on travel outside Virginia unless permission was obtained.

31. Within hours of Plaintiff's arrest on January 18, 2024, CPD officers searched Plaintiff's apartment while Plaintiff's fiancée was present.

32. CPD officers rifled through Plaintiff's private spaces searching for the distinctive "white puffy jacket," but did not locate that item. Instead, CPD seized a pair of black sweatpants.

33. The property seized by CPD officers seized property was not returned until after the charge against Plaintiff was ultimately dismissed.

34. Following Plaintiff's arrest, CPD disseminated Plaintiff's photograph publicly and portrayed Plaintiff as the accused perpetrator, creating widespread public attention and stigma.

35. Plaintiff consistently maintained his innocence and denied committing any assault.

36. After Plaintiff's arrest, Plaintiff suffered immediate and severe consequences, including suspension from his employment on January 22, 2024 and loss of access to work systems and responsibilities.

37. On January 24, 2024, Plaintiff received notice from his apartment management demanding that he vacate within days or face eviction proceedings because of the criminal charge.

38. Plaintiff incurred substantial financial burdens in defending against the charge and in attempting to obtain and present exculpatory evidence that Defendants possessed.

39. Significantly, Defendants knew that objective evidence existed that unequivocally confirmed Plaintiff's innocence, including surveillance evidence and digital location and activity data.

40. In particular, on or before January 22, 2024, Defendants and other CPD personnel obtained surveillance video relevant to the alleged January 12 incident that was wholly exculpatory as to Plaintiff.

41. The surveillance evidence obtained on January 22, 2024, definitively established that Plaintiff was not the person who committed the assault. In particular, the video shows the section on the Rivanna Trail nearby the area of the assault. Further, the video shows Plaintiff wearing a black hooded sweatshirt and dark pants passing J.L. on the trail without incident prior to the time of the assault. The video further shows a second person, not Mr. McNamara—but the actual assailant, wearing a distinctive white puffy jacket consistent with the description of the assailant reported by J.L.

6

42. Consequently, Defendants knew there was no probable cause to continue the prosecution against Plaintiff by January 22, 2024.

43. Despite possessing this plainly exculpatory surveillance evidence, Defendants failed to disclose it to the prosecuting attorney responsible for the case and, thereby, failed to ensure it was timely disclosed to Plaintiff. Incredibly, Defendants represented that nothing of value was captured on the video.

44. Because Defendants did not turn over the exculpatory surveillance evidence, the prosecution proceeded without access to information that would have terminated the case far earlier.

45. Defendants further misled the public, the prosecuting attorney and the court regarding the strength and viability of the charge by failing to disclose exculpatory information and by allowing the case to continue while exculpatory evidence remained undisclosed.

46. In fact, rather than exonerating Plaintiff, Defendant Kochis subsequently gave statements to the media, in which he vouched for the integrity of the "investigation" that led to Plaintiff's arrest and recklessly suggested that Plaintiff may have been involved in other attacks.

47. Defendant Kochis' statements were made while CPD already possessed the exculpatory surveillance evidence.

48. On or about April 9, 2024, Defendants' exculpatory surveillance evidence was finally disclosed to the defense.

49. After finally receiving this evidence, Plaintiff filed a motion to dismiss the charges against him on April 11, 2024.

7

50. More importantly, the Commonwealth also moved do dismiss the charges against the Plaintiff on Aprill 11, 2024. In its motion, the Commonwealth represented that, based on the disclosure of the surveillance evidence, the Commonwealth no longer had a basis to prosecute the Plaintiff.

51. Accordingly, on April 12, 2024, the assault and battery charge against Plaintiff was dismissed, terminating the prosecution in a manner favorable to Plaintiff.

52. On November 7, 2024, Plaintiff's record was expunged, but the reputational harm and continuing stigma from the public accusation persist.

## CLAIMS FOR RELIEF

**Count I – 42 U.S.C. § 1983 Deprivation of Liberty Without Due Process**
*Michael P. Kochis, Detective Raines, Officer Ian Haug, and Detective Justin Bowers*

53. Plaintiff repleads and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

54. At all relevant times, Defendants acted under color of state law.

55. The Fourteenth Amendment guarantees a person the right to due process of law, including the right not to be subjected to criminal proceedings and resulting deprivations of liberty through the bad-faith suppression of plainly exculpatory evidence by law-enforcement officers.

56. Defendants were all involved in the investigation and charging of the Plaintiff, but each specific act of the Defendants can only be determined through an opportunity to conduct discovery.

57. Defendants caused Plaintiff to be seized and subjected to criminal prosecution and continuing restrictions on his liberty through their investigation, procurement of warrants, and participation in the institution and continuation of the criminal charge.

58. Exculpatory evidence existed and was obtained by CPD, including surveillance video obtained on January 22, 2024 that confirmed Plaintiff's innocence and was wholly exculpatory as to the charged offense. It is believed based on their involvement in the investigation, but can only be confirmed through an opportunity to conduct discovery, that each of the Defendants was aware of the exculpatory evidence and made no efforts to bring it to the attention of the Commonwealth or Plaintiff.

59. Consequently, Defendants suppressed the exculpatory surveillance evidence by failing to disclose it to the prosecuting attorney and by failing to ensure timely disclosure to Plaintiff, and Defendants did so in bad faith and with deliberate indifference to Plaintiff's liberty and to Plaintiff's asserted innocence.

60. Defendants further misled the public, the prosecuting attorney and the court as to the viability of the charge by withholding exculpatory information and permitting the prosecution to continue without access to that evidence.

61. As a direct and proximate result of Defendants' suppression and concealment of exculpatory evidence, Plaintiff remained charged and subject to deprivations of liberty until the charge was dismissed on April 12, 2024.

62. The prosecution terminated in favor of Plaintiff when the charge was dismissed on April 12, 2024.

63. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered deprivations of liberty, emotional distress, reputational harm, financial loss, and other damages.

64. Defendants' conduct was willful, wanton, and malicious, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to compensatory

9

damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### Count II – Malicious Prosecution (Virginia Common Law)
*Michael P. Kochis, Detective Raines, Officer Ian Haug, and Detective Justin Bowers*

65. Plaintiff repleads and incorporates by reference Paragraphs 1 through 64 as if fully set forth herein.

66. Defendants instituted, procured, and/or cooperated in the institution and continuation of criminal proceedings against Plaintiff, including by securing an arrest warrant and causing Plaintiff to be arrested and charged.

67. Defendants acted without probable cause in instituting and maintaining the prosecution because the facts and evidence known to Defendants did not establish that Plaintiff committed the alleged offense, and Defendants failed to conduct an objectively reasonable investigation before seeking Plaintiff's arrest.

68. Defendants acted with malice, including by proceeding on an unreliable and unduly suggestive identification, by failing to pursue alternative suspect leads and objective evidence, and by suppressing plainly exculpatory surveillance evidence obtained on or before January 22, 2024.

69. Defendants' malice is further evidenced by their failure to disclose exculpatory evidence to the prosecuting attorney, their actions that allowed the prosecution to continue without access to exculpatory information, and their public dissemination of Plaintiff's photograph and statements that portrayed Plaintiff as guilty and suggested involvement in other crimes.

70. The prosecution terminated in a manner favorable to Plaintiff when the assault and battery charge was dismissed on April 12, 2024.

71. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered damages, including loss of liberty, emotional distress, reputational injury, financial loss, and other harms.

### Count III – Gross Negligence (Virginia Common Law)
*Michael P. Kochis, Detective Raines, Officer Ian Haug, and Detective Justin Bowers*

72. Plaintiff repleads and incorporates by reference Paragraphs 1 through 71 as if fully set forth herein.

73. Defendants owed Plaintiff a duty to exercise reasonable care in the performance of law-enforcement functions, including the duty to conduct an objectively reasonable investigation before seeking warrants and causing Plaintiff to be seized, and the duty to handle and communicate material evidence—including plainly exculpatory evidence—in a manner consistent with basic standards of police work and with due regard for an individual's liberty.

74. Defendants breached those duties.

75. Defendants' acts and omissions, individually and collectively, were not mere mistakes, negligence, or ordinary carelessness. They reflected an extreme departure from even minimal diligence and a profound indifference to the risk that Plaintiff—an innocent person—would be arrested, publicly branded as an assailant, prosecuted and forced to endure criminal proceedings and liberty restrictions.

76. By way of specific conduct constituting gross negligence, Defendants engaged in one or more of the following:

    a. Failing to meaningfully pursue alternative suspect leads developed through canvassing (including a suspect lead unrelated to Plaintiff), and failing to take basic investigative steps to evaluate those leads before focusing on Plaintiff;

11

b. Failing to promptly obtain and review readily available surveillance evidence along the Rivanna Trail corridor—despite knowing such evidence was likely available and could objectively confirm or refute a suspect's identity—before seeking an arrest warrant for Plaintiff;

c. Proceeding on an unreliable and untested identification that was tainted by informal, suggestive, and socially reinforced "crowdsourced" speculation within a running group, rather than employing accepted procedures intended to reduce misidentification risk (including a properly administered and documented lineup or photo identification procedure);

d. Seeking and obtaining an arrest warrant for Plaintiff based on that unreliable identification and without conducting an objectively reasonable investigation commensurate with the grave consequences of arrest and prosecution;

e. After arresting Plaintiff, continuing to pursue the case and allowing the prosecution to proceed while failing to ensure timely communication to the prosecuting attorney of material, plainly exculpatory evidence obtained on or before January 22, 2024—evidence that definitively established Plaintiff was not the assailant;

f. Mischaracterizing or minimizing the surveillance evidence (including representing that nothing of value was captured) and thereby impeding timely disclosure to the prosecution and to the defense;

g. Failing to act with the urgency required to correct an ongoing deprivation of liberty once Defendants possessed objective evidence confirming Plaintiff's

innocence, thereby prolonging Plaintiff's exposure to criminal prosecution and liberty restrictions;

    h. Disseminating Plaintiff's photograph and portraying Plaintiff publicly as the accused perpetrator, and allowing the stigma and reputational damage to compound, even after Defendants possessed evidence confirming Plaintiff's innocence; and

    i. Making public statements that vouched for the integrity of the investigation and recklessly suggested Plaintiff may have been involved in other attacks, at a time when CPD possessed the exculpatory surveillance evidence described above.

77. The foregoing conduct demonstrated a level of indifference to Plaintiff's liberty and rights that far exceeded ordinary negligence and amounted to a complete failure to exercise even slight care under the circumstances—conduct that reasonable and fair-minded people would find profoundly alarming.

78. As a direct and proximate result of Defendants' gross negligence, Plaintiff was arrested, handcuffed, transported, processed, jailed, and detained; had his home searched and personal property seized; was subjected to bond conditions restricting his liberty; incurred substantial criminal-defense expenses; suffered employment suspension and loss of professional standing; faced threatened eviction; and endured severe emotional distress, reputational injury, financial loss, and other damages.

79. Because Defendants' conduct amounted to gross negligence, Defendants are not entitled to immunity for these acts and omissions.

## **DAMAGES**

80. As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered a loss of liberty, including arrest, custodial detention, and ongoing restrictions imposed by bond conditions.

81. Plaintiff suffered emotional distress, including anxiety, stress, humiliation, fear, and disruption to daily life, and he continues to experience stress and anxiety from the events and their aftermath.

82. Plaintiff suffered reputational harm from the publicized accusation, including continuing stigma in the community and the persistence of internet search results associating Plaintiff with the alleged crime even after dismissal and expungement.

83. Plaintiff suffered employment-related harm, including suspension, loss of access to work systems and responsibilities, disruption to his career trajectory, and continuing professional stigma.

84. Plaintiff suffered housing-related harm, including demands to vacate his apartment, displacement from his home, and threatened and initiated eviction proceedings stemming from the criminal accusation.

85. Plaintiff incurred substantial out-of-pocket costs and financial anxiety, including costs associated with defending the criminal case and proving his innocence.

86. Plaintiff suffered loss of enjoyment of life, including strain on personal relationships, loss of friendships, and changes in personal and professional decisions made in response to the public accusation and stigma.

87. Plaintiff suffered additional damages that will continue into the future, including ongoing reputational injury and continuing professional and personal consequences.

88. Defendants' conduct was willful, wanton, and malicious, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages to punish and deter such conduct.

89. Plaintiff is entitled to recover reasonable attorneys' fees and costs as permitted by law, including pursuant to 42 U.S.C. § 1988 as to the federal claim, and to pre-judgment and post-judgment interest as allowed by law.

## **PRAYER AND REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and award Plaintiff compensatory damages in an amount to be determined by the jury, together with costs, reasonable attorneys' fees as permitted by law, and pre-judgment and post-judgment interest.

Plaintiff further requests an award of punitive damages against the individual Defendants in an amount sufficient to punish and deter willful and malicious misconduct.

Plaintiff requests such other and further relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED.**

Respectfully filed,

**PATRICK JOSEPH MCNAMARA**

/s/
Seth R. Carroll (VSB No. 74745)
Commonwealth Law Group, LLC
3311 West Broad Street
Richmond, VA 23230
Phone: (804) 999-9999
Facsimile: (866) 238-6415
scarroll@hurtinva.com

M. Scott Fisher, Jr. (VSB No. 78485)
Friedman Fisher Verity, PLLC

15

125 S. 14th Street, Suite 120
Richmond, VA 23219
Phone: (804) 602-7388
Fax: (804) 602-7768
sfisher@ffvlaw.com